**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| COMPUTER PROGRAMMING | : | |
| UNLIMITED INC., | : | CASE NO. 3:21 CV 2350 |
| | : | |
| Plaintiff, | : | JUDGE J. ZOUHARY |
| | : | |
| v. | : | |
| | : | |
| HARTFORD CASUALTY INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S MOTION FOR
<u>SUMMARY JUDGMENT REGARDING COVERAGE</u>**

Pursuant to Federal Rule of Civil Procedure 56(c), and the parties' agreement to submit coverage issues to the Court at the early outset of the case on the existing record, defendant Hartford Casualty Insurance Company ("Hartford") hereby moves for summary judgment regarding lack of coverage under Hartford's insurance policy issued to plaintiff Computer Programming Unlimited Inc. in this matter with respect to the matters alleged.  The reasons for this motion are set forth in the attached memorandum in support.

Respectfully submitted,

*/s/ Katheryn M. Lloyd*
Katheryn M. Lloyd (0075610)
Tadd L. Minton (0100254)
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300, 280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4151
Facsimile: (614) 365-9145
lloyd@carpenterlipps.com
minton@carpenterlipps.com

*Attorneys for Defendant Hartford Casualty
Insurance Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................iii

ISSUE TO BE DECIDED ........................................................................................1

SUMMARY OF ARGUMENT ................................................................................1

I. INTRODUCTION ........................................................................3

II. BACKGROUND FACTS .............................................................4

III. LAW AND ARGUMENT ............................................................5

  A. Legal Standard .....................................................................5

  B. The Policy Requires CPU To Have Suffered A Physical Loss Or Physical Damage For Coverage To Be Triggered .............................................................6

  C. CPU Admits It Suffered No Physical Loss Or Physical Damage........................14

  D. CPU Is Not Entitled To Recover Under A Property Insurance Policy Merely Because It Pays More Under A New Contract With A Service Provider Than It Did Under Its Old Contract.................................................................17

IV. CONCLUSION..........................................................................19

LOCAL RULE 7.1(f) CERTIFICATION

CERTIFICATE OF SERVICE

i

# **TABLE OF AUTHORITIES**

## **Cases**

1210 McGavock St. Hosp. Partners, LLC v. Admiral Indemnity Co., 509 F.Supp.3d 1032 (M.D. Tenn. 2020) ........................................................................................................................11

Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc., No. CIV. 99-185 TUC ACM, 2000 WL 726789 (D. Ariz. Apr. 18, 2000) ..........................................................................................13, 14

Baldwin v. Allstate Fire & Cas. Ins. Co., 433 F.Supp.3d 1077 (N.D. Ohio 2020) .......................5

Bellaire Corp. v. Am. Empire Surplus Lines Ins. Co., 2018-Ohio-2517, 115 N.E.3d 805 (8th Dist.)......................................................................................................................................17, 18

Bruster v. Uber Techs. Inc., 188 F.Supp.3d 658 (N.D. Ohio 2016) ...............................................5

Ceres Enters., LLC v. Travelers Ins. Co., 520 F.Supp.3d 949 (N.D. Ohio 2021) .........................9

Chicago Title Ins. Co. v. Huntington Nat'l. Bank, 87 Ohio St.3d 270, 719 N.E.2d 955 (1999) ....6

Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604, 710 N.E.2d 677 (1999) ............................6

Continental Cas. Co. v. Sycamore Springs Homeowners Ass'n, Inc., No. 1:09–cv–0007–LMJ–DML, 2010 WL 3522955 (S.D. Ind. Aug. 31, 2010) ...........................................................16, 17

Equity Planning Corp. v. Westfield Ins. Co., 522 F.Supp.3d 308 (N.D. Ohio 2021) ..................11

Family Tacos, LLC v. Auto Owners Ins. Co., 520 F.Supp.3d 909 (N.D. Ohio 2021) ...................9

Fischer v. United Services Auto. Ass'n., 8th Dist. Cuyahoga No. 83173, 2004-Ohio-1682 ..........6

Gaston & Murrell Fam. Dentistry, PLLC v. Cincinnati Ins. Co., No. 3:20-CV-00776, 2021 WL 4311212 (M.D. Tenn. Sept. 22, 2021) .......................................................................................13

Indiana Ins. Co. v. Alloyd Insulation Co., 2nd Dist. Montgomery No. 18979, 2002-Ohio-3916 .18

J.O. Emmerich & Assocs., Inc. v. State Auto Ins. Companies, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576 (S.D. Miss. Nov. 19, 2007) ...................................................................................14

Lenning v. Com. Union Ins. Co., 260 F.3d 574 (6th Cir. 2001) ...................................................18

MIKMAR, Inc. v. Westfield Ins. Co., 520 F.Supp.3d 933 (N.D. Ohio 2021) .........................9, 10

Motorists Mut. Ins. Co. v. Brickner, 10th Dist. Franklin Nos. 09AP–281, 09AP–282, 2009-Ohio-4843 (Sept. 10, 2009) ...................................................................................................................6

Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141 (8th Cir. 2021) ...................................10

Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co., 400 F.3d 613 (8th Cir. 2005) ..........................14

Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc., 906 F.3d 403 (6th Cir. 2018)..........5

Raboin v. Auto-Owners Ins. Co., 6th Dist. Erie No. E-07-026, 2008-Ohio-605............................6

Reliance Ins. Co. v. Keybank U.S.A., No. 1:01 CV 62, 2006 WL 2850454 (N.D. Ohio Sept. 29, 2006) ..........................................................................................................................................16

Ross v. Ohio Fair Plan Underwriting Ass'n., 5th Dist. Knox No. 07 CA 000010, 2008-Ohio-2514 ............................................................................................................................................6

Santo's Italian Cafe LLC v. Acuity Ins. Co., 508 F.Supp.3d 186 (N.D. Ohio 2020) ....................9

Santo's Italian Café LLC v. Acuity Ins. Co., 15 F.4th 398 (6th Cir. 2021) ..........................8, 9, 10

Southern Kitchen Nashville, LLC v. Cincinnati Ins. Co., No. 3:20-cv-00497, 2021 WL 4320567 (M.D. Tenn. Sept. 22, 2021) .........................................................................................10

Sys. Optics, Inc. v. Twin City Fire Ins. Co., No. 5:20-CV-1072, 2021 WL 2075501 (N.D. Ohio May 24, 2021) ...........................................................................................................................10

Sys. Optics, Inc. v. Twin City Fire Ins. Co., No. 21-3556, 2022 WL 616968 (6th Cir. Mar. 2, 2022) ............................................................................................................................................9

Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co., 484 F.Supp.3d 492 (E.D. Mich. 2020) ....................................................................................................................................10, 11

Universal Image Productions, Inc. v. Chubb Corp., 703 F.Supp.2d 705 (E.D. Mich. 2010) .......16

Universal Image Productions, Inc. v. Fed. Ins. Co., 475 F. App'x 569 (6th Cir. 2012) ................8

Westfield Ins. Co. v. Custom Agri Sys., Inc., 133 Ohio St. 3d 476, 2012-Ohio-4712, 979 N.E.2d 269.................................................................................................................................................18

## Other Authorities

10A Couch on Insurance (3d Ed.1998), Section 148:46 .................................................................9

## ISSUE TO BE DECIDED

Does plaintiff Computer Programming Unlimited, Inc.'s ("CPU's") insurance policy provide coverage for an insurance claim where plaintiff admits it suffered no physical loss of or physical damage to certain leased computer equipment and customer data, and was able to avoid any and all losses by transitioning its data to a new internet service provider when it received advance notice that its prior provider was going out of business?

## SUMMARY OF ARGUMENT

Plaintiff's purported loss in this case was not a loss at all.  Plaintiff received advance notice that a company that performed server maintenance and stored customer data for it was going out of business.  Upon receipt of that notice, plaintiff successfully worked to identify a replacement service provider, and transition all of its customer data to that alternate service provider without loss of data, disruption to customer service, or other incident.  Plaintiff, however, contends that because the new company charges it more than the old company did, the increased fees it pays should be deemed a covered cause of loss under Hartford's policy.  The policy, however, plainly requires physical loss or physical damage to trigger any coverage. Because there is no such physical loss or physical damage at stake here, no coverage is triggered. The United States Court of Appeals for the Sixth Circuit has considered similar property insurance provisions and determined that policies containing "physical loss of or physical damage to" provisions require more than the sort of purely economic damages for which plaintiff CPU seeks coverage in this case.  See, e.g., Santo's Italian Café LLC v. Acuity Ins. Co., 15 F.4th 398 (6th Cir. 2021); Sys. Optics, Inc. v. Twin City Fire Ins. Co., No. 21-3556, 2022 WL 616968 (6th Cir. Mar. 2, 2022).  Where, as here, a plaintiff complains that it suffered a "loss of use" of its insured property, such claimed losses still require some sort of physical alteration of the property in order for coverage to be triggered.  See, e.g., Equity Planning Corp. v. Westfield Ins.

<u>Co.</u>, 522 F.Supp.3d 308, 319 (N.D. Ohio 2021).  Plaintiff CPU in this case has suffered no physical loss of or physical damage to its customers' data or its computer equipment, and this Court should grant judgment in its favor.  The fact that plaintiff had to find a replacement vendor to take the place of a vendor going out of business does not create a cognizable insurance claim.

## MEMORANDUM

## I.     INTRODUCTION.

Defendant Hartford Casualty Insurance Company ("Hartford") seeks judgment in its favor on the question of insurance coverage in this case.  Plaintiff Computer Programming Unlimited Inc. ("CPU") has sued under a property insurance policy issued by Hartford for expenses CPU incurred when Nuvolat, a third-party contractor it used to manage servers and store customer data, announced it was going out of business in 30 days.  CPU found a replacement for Nuvolat and successfully moved all of its data to a different service provider without any interruption to its data access or damage to its IT infrastructure.

Notably, CPU does <u>not</u> claim that it lost any customer data as a result of the Nuvolat events, and does not claim any interest in or damage to the physical computer servers in question that hosted the data.  Instead, CPU asserts that it should have insurance coverage for the costs it incurred in having to (successfully) move its customer data from Nuvolat to a different third-party contractor, on the theory that the replacement third-party contractor charges more than Nuvolat charged before it went out of business.  The Hartford policy, however, does not provide insurance coverage for CPU's efforts to avoid hypothetical future harm where there is no actual physical loss or physical damage to the relevant data and hardware.

This is not a case about lost electronic data or damaged computer equipment.  As set forth in the parties' joint statement of undisputed facts, incorporated by reference as if fully set forth herein, it is undisputed that CPU:

3

- was given a month's notice prior to Nuvolat going out of business;

- was able to find replacement servers and service providers to host its customer data;

- successfully transitioned all of its customer data to new servers and a new service provider, without interruption or any impairment in its access to the data;

- never suffered an interruption in its ability to service its customers;

- did not lose any customers, business, or data; and

- suffered no loss of its data or equipment, because it was able to successfully migrate all of its customers' data to other servers in advance of any loss of electricity or server functionality.

At the core of this dispute is whether CPU is entitled to recover proceeds under property damage provisions of an insurance policy, No. 45 SBA TC8427 (the "Policy"). That Policy and its relevant endorsements all require that the property either be "physically lost" or "physically damaged" before coverage is triggered. CPU's insurance policy does <u>not</u> provide coverage for the facts alleged. The fact that CPU had to enter into a contract with a new service provider when its old one went out of business does not constitute a covered cause of loss, in the absence of any physical damage or physical loss to the data or equipment at issue. Hartford is entitled to judgment as a matter of law on all claims.

II.     **BACKGROUND FACTS.**

The parties have submitted a Joint Preliminary Statement setting forth core undisputed facts related to this dispute, as required by this Court's March 30, 2022 Case Management Conference Order (ECF 11). Hartford incorporates the Joint Preliminary Statement and its related exhibits as if fully set forth herein, in lieu of repeating the undisputed facts in the body of this filing. Among the various undisputed facts stipulated to by the parties, however, the following facts are most critical to the coverage issues in this case:

4

12.     Upon notice from Nuvolat that CPU needed to migrate its customers data, CPU located and acquired the use of substitute servers, software, and service licenses.   By July 15, 2020, CPU transitioned its customer data to other servers.   Its efforts to migrate its data was successful to the extent that CPU did not experience a discontinuation, stoppage, or disruption to its ability to provide services to its clients.  CPU also did not experience any power loss prior to transitioning its customer data.  See Ex. D (January 25, 2021 letter at Bates 16) (noting CPU migrated client data to replacement servers); Ex. E (March 2, 2021 letter from CPU counsel David Bryan to Hartford at Bates 24-25) (noting that CPU avoided loss of its customers' computer data through acquisition of replacement servers); Ex. F (April 9, 2021 letter at Bates 27) (CPU migrated client data to new servers prior to Nuvolat's July 15, 2021 deadline); Ex. G (July 28, 2021 letter from CPU counsel David Bryan to Hartford at Bates 274-75 (noting that CPU accomplished migration of its customers data to replacement servers prior to Nuvolat's July 15, 2021 shutdown deadline); Bates 292 ("By obtaining replacement servers and migrating its customers' data to the new servers before the electricity was cut off, you [sic] Insured avoided huge consequential damages claims from its customers for losing the customer's data backups."); and Bates 293 ("The owners of CPU fully mitigated, all most entirely, the material damages in this case by transferring its customers' data to replacement servers before the servers in the Coresite Buildings lost power.")).

Joint Preliminary Statement, ECF 12 at ¶ 12, PageID 227.

## III.   LAW AND ARGUMENT.

### A.   Legal Standard.

Questions regarding availability of insurance coverage are appropriately decided upon motion for summary judgment.  See, e.g., Baldwin v. Allstate Fire & Cas. Ins. Co., 433 F.Supp.3d 1077, 1080 (N.D. Ohio 2020) ("Insurance coverage questions are generally questions of law for the Court to decide.").

Because this case involves diversity jurisdiction, Ohio's choice of law rules govern.  See Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc., 906 F.3d 403, 406 (6th Cir. 2018).  "Ohio courts apply the law of the state with the most significant relationship to the contract."  Bruster v. Uber Techs. Inc., 188 F.Supp.3d 658, 663 n. 16 (N.D. Ohio 2016).  Because the Policy was issued to CPU in Ohio and CPU's principal place of business is in Ohio, Ohio law applies.  See Compl. (ECF 1-2) at ¶ 1.

5

Ohio law provides that "interpretation of an insurance policy is a question of law." Motorists Mut. Ins. Co. v. Brickner, 10th Dist. Franklin Nos. 09AP–281, 09AP–282, 2009-Ohio-4843, at *2 (Sept. 10, 2009) (citing Blair v. Cincinnati Ins. Co., 163 Ohio App.3d 81, 836 N.E.2d 607, 2005–Ohio–4323, ¶ 8.).  When interpreting such a contract, courts must "give a reasonable construction to the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." Raboin v. Auto-Owners Ins. Co., 6th Dist. Erie No. E-07-026, 2008-Ohio-605, ¶ 11 (citation omitted).  "[W]hen the language in an insurance policy is clear and unambiguous," Ohio courts "must enforce the contract as written[.]" Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604, 607, 710 N.E.2d 677 (1999).  In construing clear language in insurance policy provisions, courts may not

> enlarg[e] the contract by implication in order to embrace an object distinct from that contemplated by the parties . . . nor read into the contract a meaning not placed there by an act of the parties . . . nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary.

Ross v. Ohio Fair Plan Underwriting Ass'n., 5th Dist. Knox No. 07 CA 000010, 2008-Ohio-2514, ¶ 19 (internal citations and quotations omitted).

**B.      The Policy Requires CPU To Have Suffered A Physical Loss Or Physical Damage For Coverage To Be Triggered.**

Plaintiff bears the burden of proving coverage.  See, e.g., Chicago Title Ins. Co. v. Huntington Nat'l. Bank, 87 Ohio St.3d 270, 273, 719 N.E.2d 955 (1999) ("One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss."); Fischer v. United Services Auto. Ass'n., 8th Dist. Cuyahoga No. 83173, 2004-Ohio-1682, ¶ 10.  In order for CPU to be afforded coverage for its alleged loss,

6

it must point to a portion of the Policy that provides coverage for the loss event it claims to have experienced. For present purposes, the Policy consists of a base form and two endorsements.

The base policy form is entitled Special Property Coverage Form, Form SS 00 07 07 05. See Joint Preliminary Statement Ex. A (Policy), ECF 12-1 at PageID 264. The base form requires that for coverage to be triggered, CPU must have suffered a "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations." CPU appears to acknowledge that the base form does not provide coverage for CPU's losses. See, e.g., Joint Preliminary Statement Ex. D (January 25, 2021 letter from CPU's counsel to Hartford), ECF 12-4 at PageID 415 ("[N]o claim is being made under the Special Property Coverage Form."); Joint Preliminary Statement Ex. G (July 28, 2021 letter from David A. Bryan, Esq. to Hartford), ECF 12-7 at PageID 428. Rather than asserting an entitlement to coverage under the base coverage form, CPU has asserted that it is entitled to coverage under two separate modifying endorsements within the Policy.

The first of these endorsements is an endorsement titled "Computers and Media" Form SS 04 41 03 18. See Joint Preliminary Statement Ex. A (Policy), ECF 12-1 at PageID 333. This endorsement also requires that CPU suffer "direct physical loss of or physical damage, to 'computer equipment'" as a threshold matter, before covering "the cost to research, replace or restore physically lost or physically damaged 'electronic data' and 'software…'" Id.

The second endorsement is titled "Technology and Software Service Providers Stretch" Form SS 40 12 09 07. It incorporates the same substantive terms of the first endorsement, but "stretches" to dollar amount of the limits of insurance otherwise available to a higher dollar figure. By incorporating the first Computers and Media endorsement above, this second endorsement also therefore requires CPU to have suffered a "direct physical loss of or physical

7

damage to [CPU's] 'computer equipment.'"  See Joint Preliminary Statement Ex. A (Policy),
ECF 12-1 at PageID 352.

The necessity for physical loss or physical damage to trigger property insurance coverage
has been recognized by myriad courts.  The Sixth Circuit Court of Appeals has long held that
such "direct physical loss or damage" provisions require actual, tangible damage to insured
property.  For example, in Universal Image Productions, Inc. v. Fed. Ins. Co., 475 F. App'x 569
(6th Cir. 2012), the court affirmed the grant of summary judgment to an insurer where the
insured sought property insurance coverage for cleaning and moving expenses, and lost business
income, in connection with mold conditions that were fully remediated by the landlord without
causing any damage to the property.  The court noted that plaintiff alleged "not tangible, physical
losses, but economic losses."  Id. at 573.  That was not enough.  Because the mold on the
property did not cause any physical alteration of the property itself, the insured was not entitled
to coverage.  Id. at 574.  Physical damage to the property (or the absence thereof) was key to
assessing whether coverage was triggered.

Most recently, courts have dealt with property insurance claims relating to COVID-19
business interruption issues.  In these cases, plaintiffs asserted loss of use of their property and
lost sales as a result of government-ordered closures.  The courts, in turn, analyzed whether these
events resulted in any alleged "direct physical loss of" or "physical damage to" insured premises
under property damage coverage forms.  Within the Sixth Circuit and the Northern District of
Ohio, the courts have been nearly uniform in their findings that insureds were not entitled to
property insurance coverage where the property itself was not damaged.  The courts have
rejected "loss of use" coverage theories for purely economic losses where, as here, the policy
language requirement of "physical loss" or "direct physical damage."  See, e.g., Santo's Italian

8

Café LLC v. Acuity Ins. Co., 15 F.4th 398 (6th Cir. 2021); Sys. Optics, Inc. v. Twin City Fire

Ins. Co., No. 21-3556, 2022 WL 616968 (6th Cir. Mar. 2, 2022); Ceres Enters., LLC v. Travelers

Ins. Co., 520 F.Supp.3d 949 (N.D. Ohio 2021); MIKMAR, Inc. v. Westfield Ins. Co., 520

F.Supp.3d 933 (N.D. Ohio 2021); Family Tacos, LLC v. Auto Owners Ins. Co., 520 F.Supp.3d

909 (N.D. Ohio 2021).   In this respect, it is not enough for a party to claim "loss of use" of

property without accompanying physical loss, physical damage, or tangible damage to the

property in the form of an actual physical alteration:

> [C]ase law from this state and the Sixth Circuit construes "physical loss" to
> require some kind of tangible alteration.  The Sixth Circuit, in Universal Image
> Prods., interpreted "direct physical loss or damage" to require "tangible damage."
> Universal Image Prods., 475 Fed. App'x at 573.  In arriving at its interpretation,
> the Sixth Circuit quoted Mastellone's requirement that "physical injury" requires
> harm that affects the structural integrity of the insured premises.
> …
> Ohio law construes "direct physical loss of or damage to" insured property to
> require that the plaintiff-insured plead distinct, demonstrable, physical alteration
> of the insured property.  See, e.g., Mastellone, 175 Ohio App. 3d at 40, 884
> N.E.2d 1130.  Accepting the factual allegations in Santo's Complaint as true,
> Santo's fails to plead any physical alteration of its insured property.

Santo's Italian Cafe LLC v. Acuity Ins. Co., 508 F.Supp.3d 186, 197 (N.D. Ohio 2020), aff'd, 15

F.4th 398 (6th Cir. 2021); see also 10A Couch on Insurance (3d Ed.1998), Section 148:46 ("The

requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held

to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim

against the property insurer when the insured merely suffers a detrimental economic impact

unaccompanied by a distinct, demonstrable, physical alteration of the property").

The Sixth Circuit itself has affirmed this analysis, and affirmed dismissal of claims for

pure economic loss unaccompanied by any actual physical loss or physical damage:

> The restaurant has not been tangibly destroyed, whether in part or in full.  And the
> owner has not been tangibly or concretely deprived of any of it. . . .
>
> The novel coronavirus did not physically affect the property in the way, say, fire

9

> or water damage would.  No one argues that the virus physically and directly
> altered the property. . . .  The Governor's shut-down orders also did not create a
> direct physical loss of property or direct physical damage to it.  They simply
> prohibited one use of the property—in-person dining—while permitting takeout
> dining and through it all did not remotely cause direct physical damage to the
> property.

Santo's Italian Café, 15 F.4th at 401-02.  Without a physical loss or physical damage, purely

economic losses are not sufficient to trigger coverage.  See Sys. Optics, Inc. v. Twin City Fire

Ins. Co., No. 5:20-CV-1072, 2021 WL 2075501, *9 (N.D. Ohio May 24, 2021), aff'd, 6th Cir.

No. 21-35562022 WL 616968 (Mar. 2, 2022) ("[U]nder Ohio law, 'direct physical loss' requires

some actual harm to the [covered property] rendering it uninhabitable or unusable…purely

economic losses…do not trigger coverage."); MIKMAR, Inc. v. Westfield Ins. Co., 520

F.Supp.3d 933, 940 (N.D. Ohio 2021) (no coverage for "financial or monetary losses resulting

from" an alleged loss event that does "not work any perceptible harm to the properties at issue.").

An insured cannot avoid the requirement to allege and prove physical loss or physical

damage merely by pivoting to a "loss of use" theory of recovery.  Courts have repeatedly found

that insureds were not entitled to coverage for "loss of use" where the insured did not suffer

physical loss, physical damage, or physical alteration in the first instance.  For example, in

Southern Kitchen Nashville, LLC v. Cincinnati Ins. Co., No. 3:20-cv-00497, 2021 WL 4320567,

*6 (M.D. Tenn. Sep. 22, 2021), the court rejected the argument that the plaintiff's claimed "loss

of use" was enough under the policy where there was no "direct physical loss or damage to the

premises," and no "tangible, material, physical alteration to property."  Id. at *7.  The same result

has been obtained in myriad courts considering comparable property insurance policies.  See,

e.g., Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141, 1145 (8th Cir. 2021) ("The policy

clearly does not provide coverage for Oral Surgeons's partial loss of use of its offices, absent a

showing of direct physical loss or physical damage."); Turek Enterprises, Inc. v. State Farm Mut.

10

Auto. Ins. Co., 484 F.Supp.3d 492, 501 (E.D. Mich. 2020) (rejecting "loss of use" argument because "the plain meaning of 'direct physical loss to Covered Property' requires that there be a loss to Covered Property; and not just any loss, a direct physical loss") (emphasis in original); 1210 McGavock St. Hosp. Partners, LLC v. Admiral Indemnity Co., 509 F.Supp.3d 1032, 1042 (M.D. Tenn. 2020) ("The plaintiff has certainly suffered economic loss, but it is unable to show that it has suffered "direct physical loss of or damage to" the premises or property covered by the Policy.") (emphasis in original).

Northern District of Ohio courts agree.  "Loss of use" of property not accompanied by physical loss, physical damage, or physical alteration of the property does not provide a property insurance coverage trigger:

> E.P.'s interpretation that "direct physical loss" includes economic losses, such as those that E.P. claims here, stretches the Policy language beyond its plain meaning and requires the Court to read the word "physical" out of the Policy language. (Doc. No. 20, PageID# 471.)  The Court may not do so.

Equity Planning Corp. v. Westfield Ins. Co., 522 F.Supp.3d 308, 319 (N.D. Ohio 2021).  The court in Equity Planning directly rejected the plaintiff insured's argument that mere loss of use of its insured property constituted a covered loss where the policy language required "direct physical loss or damage to property or premises."  As explained supra, courts require more than mere economic loss without physical alteration to property in order to find coverage under the relevant policy language, and CPU cannot overcome that fact.

Here, CPU insists that under two endorsements, it has the capacity to recover "loss of use" damages.  In doing so, it notes that the two endorsements (unlike the base property form they modify) do not contain an express exclusion to bar the prospect of loss of use damages.  What CPU overlooks is that under both endorsements, it is still required to have experienced a triggering loss event in the form of physical loss or physical damage as an initial matter that led

11

to any consequential loss of use.  Under the Computers and Media endorsement, which is

adopted by the Stretch endorsement:

> ==We will pay for direct physical loss of or physical damage, to "computer equipment"== and the cost to research, replace or restore ==physically lost or physically damaged "electronic data" and "software"== subject to the Limit of Insurance shown in the Declarations for Computers and Media while anywhere within the coverage territory, and while in transit, but only if:
> > **a.** Owned by you; or
> > **b.** Owned by others but in your care, custody and control regardless of whether you use it for personal or business needs

Joint Preliminary Statement Ex. A (Policy), ECF 12-1 at PageID 333.  "Physical loss" or

"physical damage" is the trigger under the endorsements upon which CPU relies.  Nothing in the

endorsements exempts CPU from the obligation to establish physical loss or physical damage,

including as to electronic data, before claiming "loss of use" or any other form of covered loss.

As the COVID cases demonstrate, a restaurant that experienced fire damage to its

physical structure may have compensable loss of use damages flowing from that physical

damage or physical loss event, where it had to remain closed while repairs occurred; a restaurant

that merely closes, without the physical loss or physical damage as a triggering event, does not

get to claim "loss of use damages."

Nothing about a focus on computers or technology changes that basic analysis.  Even in

the realm of computers and IT, there still is a threshold requirement for a loss event and direct

damage before loss of use can be claimed.  For example, there are power outage cases that have

looked to the question of whether a sudden, unexpected power outage caused ongoing damage to

IT structures.  Courts in this Circuit have had occasion to consider an older Arizona case on this

score, where:

> In this case, Ingram does allege property damage--that as a result of the power
> outage, Ingram's computer system and world-wide computer network physically
> lost the programming information and custom configurations necessary for them
> to function.

Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc., No. CIV. 99-185 TUC ACM, 2000 WL

726789, at *3 (D. Ariz. Apr. 18, 2000).  Multiple cases in the Sixth Circuit have examined Am.

Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc., id., and concluded that it does not eliminate

the requirement for direct physical loss or damage before a party can claim "loss of use."  Those

cases have concluded that Ingram and its progeny require more than just "loss of use" in the

sense of computers being turned off; the cases require allegations and proof that when power

came back on, computer settings had to be repaired and reconfigured because they were

damaged by virtue of the unexpected outage:

> The language quoted by Plaintiff regarding "loss of access, loss of use, and loss of
> functionality" was with regard to a computer which lost data due to damage from
> a power outage.  See id. at 838.  The insurance company argued that the data loss,
> which was not accompanied by physical damage to the computer, was not a
> covered loss.  Id. at 837. The Southeast court found that with regard to computers
> and loss of data, " '[P]hysical damage' is not restricted to the physical destruction
> or harm of computer circuitry but includes the loss of access, loss of use, and loss
> of functionality.  The computers 'physically lost programming information and
> custom configurations necessary for them to function' when they were damaged
> by the power outage."  Id. at 838 (quoting Am Guar. & Liability Co. v. Ingram
> Micro, Inc., No. 99-185, 2000 WL 726789 (D. Ariz. Apr. 18, 2000)).  The
> Southeast court did not extend this reasoning to include "loss of access, loss of
> use, and loss of functionality" of the premises itself.  Indeed, as discussed above,
> the court held the opposite.  Despite losing use of its premises for two weeks,
> there was no coverage under the policy because there was no direct physical loss
> or damage to the premises.  See id. at 837.

Gaston & Murrell Fam. Dentistry, PLLC v. Cincinnati Ins. Co., No. 3:20-CV-00776, 2021 WL

4311212, at *6 (M.D. Tenn. Sept. 22, 2021).  Thus, even under Ingram, a power outage must

result in actual physical damage to the IT systems before it could trigger property insurance coverage.  See, e.g., Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co., 400 F.3d 613, 617 (8th Cir. 2005) ("But Ingram again involved a power outage that damaged other property.  It does not support the broader proposition that a power outage alone constitutes physical loss or damage to property."); J.O. Emmerich & Assocs., Inc. v. State Auto Ins. Companies, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *4 (S.D. Miss. Nov. 19, 2007) ("Ingram is distinguishable on its facts because the loss of access resulted from the need to re-program the computers following the outage.  Here, the computers were merely unavailable; there was no physical damage of any sort.").

In this case, of course, there was no sudden power outage, nor any lost programming information or loss of custom configurations, as more fully set forth below.  There instead was an orderly migration of data from one set of servers to another, with no allegation of any damage to the data whatsoever.  Any "outage" was purely planned, and came after the data was safely migrated to new servers.

### C.     CPU Admits It Suffered No Physical Loss Or Physical Damage.

CPU has not contended that it lost any customer data as a result of the Nuvolat events.  It actually agrees that it successfully migrated all client data off the Nuvolat-managed servers before Nuvolat went permanently offline.  See Joint Preliminary Statement, ECF 12 at ¶ 12, PageID 227 (describing various communications from CPU counsel David A. Bryan, Esq.).  This Court will find no evidence in the record that a single CPU customer was harmed or impaired in its ability to access data, and the Court will find no evidence that CPU has ever claimed it lost a single customer in connection with the Nuvolat events.  Data that was intact while Nuvolat

14

managed the Servers remained intact after that data was successfully moved from Nuvolat to a new third-party service provider by CPU.  CPU in this case:

- Does <u>not</u> allege that it suffered a power outage that caused its servers to crash and its settings to be destroyed;

- Does <u>not</u> allege that Nuvolat harmed its customer data;

- Does <u>not</u> allege that <u>any</u> customer data was lost or damaged in the migration to new servers;

- Does <u>not</u> allege that the server farm suffered some kind of physical loss event that resulted in any loss of use of CPU's data or servers, and

- Does <u>not</u> even allege that its access to data was in any way delayed or impaired.

In short, no data was lost, and no data was damaged.

CPU, through its counsel, also has admitted that it did not suffer a "physical loss of" or "physical damage to" its leased Servers—<u>i.e.</u>, the hardware itself on which the customer data was stored before being transitioned to the new third-party service provider.  In a July 28, 2021 letter to Hartford, CPU's counsel, David Bryan, Esq., admitted that whether or not the Servers had been damaged was of no consequence to CPU, and CPU disclaimed any related damages. Mr. Bryan wrote:

> It is your Insured's view of this case, that a return of the servers to the Insured or to Hartford under a subrogation claim is not material.  The used, now outdated, servers have little value as stand alone computer equipment.  The damages your Insured seeks under the Policy is not for the loss of the servers, it is for the *loss of the use* of the servers.  One CPU was put on notice of a date that it would lose the use of the Computers, it had no choice but to immediately go out and purchase replacement servers at a different location to preserve its customers data.

> Retrieving the servers meant little to nothing since it was clear that they could not
> be retrieved in time to save the data.

Joint Preliminary Statement Ex. G (July 28, 2021 letter from David A. Bryan, Esq. to Hartford),

ECF 12-7 at PageID 430. CPU's statement in this regard is an admission that it does not claim

any "physical loss of" or "physical damage to" its Servers.

Rather than citing any actual physical loss or damage, CPU claims that if it had not taken

affirmative actions to locate an alternative service provider, all of those kinds of eventualities

might have occurred—i.e., CPU could have hypothetically lost customer data and suffered harm

as a result. See, e.g., Joint Preliminary Statement Ex. D (January 25, 2021 letter from CPU's

counsel to Hartford), ECF 12-4 at PageID 416. In this respect, CPU has invoked the prospect of

future damage or future losses.

Its position in this respect is at odds with the law. The Northern District of Ohio has

recognized "recovery will not be permitted" for "hypothetical losses." Reliance Ins. Co. v.

Keybank U.S.A., No. 1:01 CV 62, 2006 WL 2850454, *26 n.35 (N.D. Ohio Sept. 29, 2006)

(granting summary judgment where plaintiff made claim for speculative, hypothetical damages

instead of suffering an actual loss). See also Universal Image Productions, Inc. v. Chubb Corp.,

703 F.Supp.2d 705, 710 (E.D. Mich. 2010), aff'd sub nom., 475 F. App'x 569 (6th Cir. 2012)

(granting summary judgment to insurer where insured cited mere anticipated losses rather than

actual physical losses). CPU's claim that it is entitled to insurance coverage because it might

have suffered a loss in the future had Nuvolat not been replaced is inconsistent with Ohio and

Sixth Circuit law. See id.; see also Continental Cas. Co. v. Sycamore Springs Homeowners

Ass'n, Inc., No. 1:09–cv–0007–LMJ–DML, 2010 WL 3522955, *6, (S.D. Ind. Aug. 31,

16

2010), aff'd, 652 F.3d 804 (7th Cir.) (holding "the policy does not provide coverage for anticipated damages from a loss that has not yet happened.").

       **D.**     **CPU Is Not Entitled To Recover Under A Property Insurance Policy Merely Because It Pays More Under A New Contract With A Service Provider Than It Did Under Its Old Contract.**

CPU calls its own affirmative actions in locating an alternative service provider "loss of use" damages.  That distorts any definition of "loss of use," when it is undisputed that CPU maintained direct and ready access to its data to use at all times.  See Joint Preliminary Statement, ECF 12 at ¶ 12, PageID 227 (detailing CPU admissions that no data was lost).  CPU did not lose the use of data; it lost one contractual partner that it successfully and seamlessly replaced with another contractual partner, with no interruption, no physical damage, and no physical loss.

CPU's theory is that it is entitled to the difference between the cost of the contract with Nuvolat and the cost of the new, replacement contract it secured when Nuvolat provided notice that Nuvolat intended to terminate its contract early.  See, e.g., Joint Preliminary Statement Ex. D (January 25, 2021 letter from CPU's counsel to Hartford), ECF 12-4 at PageID 416 (seeking coverage for difference between what CPU paid Nuvolat under the terminated contract and what it paid its new service provider for the same services).  In this respect, CPU has argued that its actions prevented future damage and thereby saved costs.  That does not make for an insurance claim:

> [C]osts incurred to prevent future harm are generally not covered by insurance. Courts have held that prophylactic costs incurred to prevent future harm are "not caused by the happening of an accident, event, or repeated exposure to conditions but rather result from the prevention of such an occurrence."  Cinergy Corp. v. Assoc. Elec. & Gas Ins. Servs. Ltd., 865 N.E.2d 571, 583 (Ind.2007); see also Evansville v. United States Fid. & Guar. Co., 965 N.E.2d 92, 101 (Ind.App.2012).

17

<u>Bellaire Corp. v. Am. Empire Surplus Lines Ins. Co.</u>, 2018-Ohio-2517, ¶ 28, 115 N.E.3d 805, 811 (8th Dist.).  CPU is wrongly seeking "prophylactic costs incurred to prevent future harm," and such coverage is not available under Ohio law.

Fundamentally, CPU's contention in this case is <u>not</u> that it experienced a sudden, unexpected loss causing physical damage to its data or equipment.  It instead received advance warning that a contractual partner was going out of business, and it would need to make other arrangements.  It made those arrangements, and transitioned its data without any damage or loss to the data or servers.  That kind of orderly transition mandated by changing business and contractual relationships is not the stuff insurance claims are made of.

Ohio courts recognize that "[i]nsurance coverage is bottomed on the concept of fortuity." <u>Indiana Ins. Co. v. Alloyd Insulation Co.</u>, Second Dist. Montgomery No. 18979, 2002-Ohio-3916, ¶ 27.  "Indeed, [t]he fortuity principle is central to the notion of what constitutes insurance."  <u>Westfield Ins. Co. v. Custom Agri Sys., Inc.</u>, 133 Ohio St. 3d 476, 2012-Ohio-4712, 979 N.E.2d 269, ¶ 13 (internal citation omitted).  Having to make other business arrangements (and succeeding in doing so) when a third-party breaches a contract is not within the ambit of what insurance is meant to address.  The Sixth Circuit has rejected the notion that the kind of "cover" or preemptive financial mitigation strategies that CPU invokes here constitute a covered loss event:

> … Tapp has not alleged any damage to, destruction of, or loss of the use of property. Furthermore, Tapp has not alleged any bodily injury.  Instead, he merely claims that he was forced, at tremendous expense, to complete the construction job that Plaintiff and Gatterdam had left unfinished.  Courts in other states have held that such a purely economic claim cannot constitute an "occurrence."

<u>Lenning v. Com. Union Ins. Co.</u>, 260 F.3d 574, 582 (6th Cir. 2001).  While the <u>Lenning</u> case arises in the commercial general liability context, the core principle applies here: pure economic

damages associated with having to replace a breached contract with a viable one do not constitute a trigger for insurance coverage.  Hartford is not and has never been a party to the contract governing the relationship between Nuvolat and CPU.  If CPU believes it suffered economic damages due to Nuvolat's failure to fulfill its obligations under that contract, CPU's remedy is against Nuvolat.  Insurance policies are not designed to cover these types of purely economic contractual damages.

The Hartford policy does not insure contractual performance by CPU's business partners.  CPU does not actually allege "loss of use" of data or equipment; it alleges "more costly use" of undamaged data and equipment.  There is no insurance in the Hartford policy for ordinary course of business price increases.  Hartford did not agree to assure that CPU's own contractual partners will perform their contractual obligations.  Nor does the policy provide any guarantees by Hartford that CPU's contractual partners will not change, and/or will not change their prices.  CPU is not entitled to dress up a breach of contract claim against Nuvolat as an insurance claim against Hartford.  At the end of the day, with no actual physical loss or physical damage to data or equipment, and no fortuity at stake in insurance terms (only a pre-announced contractual termination), CPU is not entitled to property insurance coverage for the "prophylactic costs incurred to prevent future harm" that never transpired.

IV.    **CONCLUSION.**

For the reasons set forth above, defendant Hartford Casualty Insurance Company respectfully requests this Court enter summary judgment in its favor with respect to CPU's claim for breach of contract, thereby establishing that the Policy in question does not provide coverage for the matters alleged.

19

Respectfully submitted,

*/s/ Katheryn M. Lloyd*
Katheryn M. Lloyd (0075610)
Tadd L. Minton (0100254)
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300, 280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4151
Facsimile: (614) 365-9145
lloyd@carpenterlipps.com
minton@carpenterlipps.com

*Attorneys for Defendant Hartford Casualty*
*Insurance Company*

20

## <u>LOCAL RULE 7.1(f) CERTIFICATION</u>

Pursuant to Local Rule 7.1(f), the undersigned states that this case has not yet been assigned a case track and that the foregoing Memorandum in Support adheres to the page limitations for unassigned cases.

/s/  Katheryn M. Lloyd
*One of the Counsel for Defendant Hartford Casualty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing Defendant Hartford Casualty Insurance Company's

Motion for Summary Judgment Regarding Coverage was uploaded to the Court's ECF system on

July 7, 2022, which will cause service upon the following:

> Katherine A. Pawlak Macek, Esq.
> David A. Bryan, Esq.
> Wasserman, Bryan, Landry & Honold LLP
> 1090 W. South Boundary St., Suite 500
> Perrysburg, Ohio 43551
> (419) 243-1239
> KPawlak@wblhlaw.com
> DBryan@wblhlaw.com
>
> *Attorneys for Plaintiff*
> *Computer Programming Unlimited Inc.*

> <u>/s/ Katheryn M. Lloyd</u>
> *One of the Attorneys for Defendant*
> *Hartford Casualty Insurance Company*